# IN THE SUPREME COURT OF TEXAS

No. 15-0073

KEN PAXTON, ATTORNEY GENERAL OF TEXAS, PETITIONER,

v.

CITY OF DALLAS, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

JUSTICE BOYD, joined by JUSTICE JOHNSON, dissenting.

When this Court gets to make the rules, it goes to great lengths to protect attorney-client communications. As the Court explains today, under the common law and our evidentiary and procedural rules (that is, the rules this Court gets to make), most attorney-client communications are protected from compelled disclosure unless the client waives the privilege by intentionally relinquishing it or engaging in conduct inconsistent with the right to claim it. *Ante* at __ (citing *In re Nationwide Ins. Co.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding); TEX. R. EVID. 503, 511; TEX. R. CIV. P. 193.3(d)).

But we don't get to make the rules here. When the public seeks access to public information that the government possesses on the public's behalf, the Texas Public Information Act controls. TEX. GOV'T CODE §§ 552.001–.353. The government has no inherent, constitutional, or common-law right to withhold any public information from the public's view. The Texas Constitution guarantees that all "political power is inherent in the people," and the government is "founded on

their authority, and instituted for their benefit." TEX. CONST. art. I, § 2. Based on the "fundamental philosophy" of this "constitutional form of representative government," the people of Texas have declared through their duly elected lawmakers that "it is the policy of this state" that "each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees." TEX. GOV'T CODE § 552.001(a). Although the people have delegated significant authority to their government, they have not given "their public servants the right to decide what is good for the people to know and what is not good for them to know." *Id.* Instead, the people "insist on remaining informed so that they may retain control over the instruments they have created." *Id.*

The Texas Public Information Act recognizes that the government may need to keep certain attorney-client communications confidential, just as it recognizes the government may need to keep certain trade secrets, student records, information about bioterrorist threats, and other types of information confidential. In each case, the Act protects the need for confidentiality by providing an exception to the Act's public-disclosure requirement. But the Act's protection is limited, and it treats attorney-client communications exactly the same as all other excepted information.

Relying on Court-created common-law and litigation rules, the Court decides today to treat the attorney-client privilege as unique and special even though the Act does not. The Act treats the privilege as the basis for an exception to the Act's disclosure requirement, but the Court holds that it is also—categorically and always—a "compelling reason" to withhold government communications from the public even when the government fails to timely and properly claim the Act's exception. Under the Court's holding, establishing the exception will always constitute a compelling reason, so the Act's compelling-reason requirement is meaningless when applied to

2

attorney-client communications. This holding obliterates the sole method by which the Act compels the government to timely and properly assert the attorney-client privilege.

Nothing in the Act supports the Court's decision to grant the privilege such special treatment. Nor do the Court's hyperbolic assertions that holding otherwise might cause the government to stop relying on legal advice.[1] At least twenty-two years of reality have conclusively proven the contrary. Adhering to the Act's requirements instead of the Court's policy preferences and preposterous predictions, I conclude that the attorney-client privilege cannot independently constitute a compelling reason to permit the government to withhold public information when the government fails to assert the privilege as and when the Act requires. Instead, like every other basis for one of the Act's exceptions, the privilege triggers an exception to the Act's disclosure requirement. If the government fails to timely and properly assert that exception, the Act requires that the facts and circumstances of the particular case establish a compelling reason that effectively demands that the information be withheld from the public despite the government's failure to timely comply with the Act. Because the City of Dallas has provided no such compelling reason in these particular cases, I would reverse.

---

[1] Contrary to the Court's assertion, I do not "dismiss[] the importance of the privilege in the government context as mere hyperbole." *Ante* at ___. I acknowledge the privilege's importance, just as the Act does by excepting privileged attorney-client communications from its disclosure requirement. What I find hyperbolic is the Court's suggestion that governmental bodies will stop relying on legal advice unless we hold that the privilege is itself a compelling reason to withhold information when a governmental body fails to timely and properly assert the exception. As discussed below, history has proven otherwise.

3

## I.
## Compelling Reason

The Texas Public Information Act's foundational provision requires the government to make public information[2] "available to the public at a minimum during the normal business hours of the governmental body"[3] that possesses the information. TEX. GOV'T CODE § 552.021. When the government receives a request for public information, it must provide the information to the requestor "promptly," which means "as soon as possible under the circumstances, that is, within a reasonable time, without delay." *Id.* § 552.221(a). The government may withhold requested information only as expressly provided by the Act. *See id.* § 552.006. The Act pointedly requires that we construe its provisions "liberally . . . in favor of granting a request for information." *Id.* § 552.001(b).[4] Like any other statute, we must enforce the Act "as written" and "refrain from rewriting [its] text." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009) (citing *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920)).

The Act provides numerous exceptions to its disclosure requirement. *See* TEX. GOV'T CODE §§ 552.101–.156. But the government cannot unilaterally withhold information it believes falls within one of the exceptions. Instead, it must ask the Attorney General to decide whether an

---

[2] It is undisputed that the government's attorney-client communications are "public information" under the Act. "Public information" includes all information "that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business," either (1) by a governmental body, (2) for a governmental body, if the governmental body owns the information, has a right of access to the information, or "spends or contributes public money for the purpose of writing, producing, collecting, assembling, or maintaining the information," or (3) "by an individual officer or employee of a governmental body in the officer's or employee's official capacity and the information pertains to official business of the governmental body." TEX. GOV'T CODE § 552.002(a).

[3] It is undisputed that the City of Dallas is a governmental body under the Act. *See* TEX. GOV'T CODE § 552.003(1)(A)(iii) (including in definition of "governmental body" "a municipal governing body in the state").

[4] The Court criticizes the Attorney General for taking a "constrained" and "restrictive" view of the statutory language," *ante* at __, __, yet that is exactly what the Act instructs the Attorney General and this Court to do.

4

exception applies. *Id.* § 552.301(a). Specifically, the government must ask for the Attorney General's decision, identify the exceptions on which it relies, and provide notice to the requestor within "a reasonable time" but not more than ten business days after receiving the public-information request. *Id.* § 552.301(b), (d). Then, within a "reasonable time" but not more than fifteen business days after receiving the request, the government must submit written comments to the Attorney General explaining why the asserted exceptions apply and must send a copy of those comments to the requestor. *Id.* § 552.301(e), (e-1).[5] The Attorney General must "promptly render a decision . . . determining whether the requested information is within one of the exceptions." *Id.* § 552.306(a). The government must either comply with the Attorney General's decision or file suit to challenge it. *See id.* § 552.324(a).

The Act expressly refers to section 552.301's ten- and fifteen-day time limits as "deadlines." *Id.* § 552.2615(g). A deadline is "a date or time before which something must be done and after which the opportunity passes or a penalty follows." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 580 (2002). Section 552.302 describes the consequences of the government's failure to meet section 552.301's deadlines:

> If a governmental body does not request an attorney general decision as provided by Section 552.301 and provide the requestor with the information required by Sections 552.301(d) and (e-1), the information requested in writing *is presumed to be subject to required public disclosure and must be released unless there is a compelling reason to withhold the information.*

---

[5] While the Court acknowledges that the Act imposes a deadline for asserting a "statutory exception," it contends that there is "no statutory deadline for asserting the attorney-client privilege." *Ante* at __ n.132. To the contrary, section 552.301 imposes both a ten-day deadline for asserting the applicable exception and a fifteen-day deadline for asserting the reason the exception applies. Here, the City missed both deadlines, and thus failed to timely and properly assert the privilege, regardless of how "jealously" it has attempted to guard the privilege thereafter.

TEX. GOV'T CODE § 552.302 (emphasis added).

In these two consolidated cases, the City of Dallas received requests for information that included its attorney-client communications, but it failed to request the Attorney General's decision within ten business days as section 552.301 requires. Instead, the City waited until the twenty-sixth business day after receiving one request and the forty-ninth business day after receiving the other. According to the record, the City never provided any explanation for having missed the deadlines.[6] The parties agree that section 552.302 requires the City to disclose the communications unless a "compelling reason" exists to withhold them, but they disagree on whether the City established a compelling reason. The Court holds that "a reason to withhold information will be 'compelling' only when it is of such a pressing nature (e.g., urgent, forceful, or demanding)  that it outweighs the interests favoring public access to the information and overcomes section 552.302's presumption that disclosure is required." *Ante* at __. The Court's test leans in the right direction, but it ultimately come up short.

With regard to the Court's first element, the Court makes no effort to define how "pressing" is sufficient. Because the Act does not define the term "compelling" or the phrase "compelling reason," we must apply their common, ordinary meanings unless "a different or more precise definition is apparent from the term's use in the context of the statute." *R.R. Comm'n of Tex. v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 568 (Tex. 2016) (quoting *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2001)). Under the common, ordinary meaning of the term, a reason that is "of such a pressing nature" so as to be *compelling* is one that is not just

---

[6] At oral argument before this Court, the City's attorney asserted that the City simply "missed the deadlines in both of these instances. It was inadvertence, I believe. There's . . . nothing in the record to indicate anything else."

"urgent" or "forceful," but so "urgent" and "forceful" that it effectively *demands* and *requires* the desired result. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 463 (2002) (defining "compelling" as "*demanding* respect, honor, or admiration," and "compel" to mean to "call upon, require, or command *without possibility of withholding or denying*") (emphases added).[7] The term "compelling," in other words, connotes "force or coercion, with *little or no volition* on the part of the one compelled." BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 183 (2nd ed. 1995) (emphasis added).[8] "To be compelling, a justification must be more than simply legitimate or good; it should be persuasive to the point of demanding respect or acquiescence." *City of Dallas v. Abbott*, 304 S.W.3d 380, 393 (Tex. 2010) (WAINWRIGHT, J., dissenting). In short, when a reason

---

[7] Similarly, Black's defines "compel" as to "cause or bring about by force, threats, or overwhelming pressure" and—within the legal context—to "convince (a court) that there is *only one possible resolution* of a legal dispute." *Compel*, BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added).

[8] Consistent with their common, ordinary meanings, Texas statutes repeatedly use the terms "compel" and "compelling" to refer to court orders, subpoenas, statutes, and other authorities that effectively demand and require their intended result. *See, e.g.*, TEX. BUS. & COM. CODE §§ 15.10(g)(5)(E) (referring to court order "compelling" oral testimony); .13(a), (b), (d) (same); TEX. CIV. PRAC. & REM. CODE § 171.021(c) (referring to court order "compelling" arbitration); TEX. CODE CRIM. PROC. art. 46C.104(a) (referring to court order "compelling" testimony); TEX. ELEC. CODE §§ 221.009(a) (referring to court order "compelling" voter to reveal vote); 231.006 (referring to subpoena "compelling" production of election records); TEX. EST. CODE § 309.056(c)(3) (referring to order compelling production of estate inventory); TEX. FAM. CODE § 157.372 (referring to court order "compelling" return of kidnapped child); TEX. FIN. CODE §§ 35.204(a) (referring to court order "compelling" compliance with subpoena); 185.203(a) (same); TEX. GOV'T CODE § 33.023(d) (referring to court order "compelling" judge to submit to physical or mental examination); TEX. HEALTH & SAFETY CODE §§ 12.002(b) (referring to court order "compelling" compliance with statutory requirements); 314.003(a) (referring to court order "compelling" compliance with civil investigative demand); TEX. INS. CODE §§ 823.351(b-1) (referring to court order "compelling" witness testimony or production of documents); 4201.601 (referring to commissioner's order "compel[ling]" production of information); TEX. LOC. GOVT. CODE §§ 54.044(b), (c) (referring to orders "compelling" testimony and production of documents); 325.089 (referring to court order "compelling" compliance with bond requirements); TEX. NAT. RES. CODE § 86.001 (referring to statute's purpose of "compelling" ratable production of natural gas); TEX. OCC. CODE § 1702.367(a) (referring to subpoena "compelling" testimony of witness or production of documents); TEX. PROP. CODE § 114.008(a)(3) (referring to court order "compel[ling]" trustee to pay money or restore property); TEX. TRANSP. CODE §§ 284.204(b)(2) (referring to order "compelling" attendance of witnesses and production of documents); 682.005 (same); 707.009 (same); 730.007(c)(2) (referring to subpoena "compelling" production of photographic image); TEX. WATER CODE §§ 54.016(g) (referring to court order "restraining, compelling or requiring" district to comply with consent agreement); 65.513 (referring to court order "compelling" district to comply with bond conditions); 66.319 (same).

7

is compelling, reasonable minds can only conclude that it demands and requires the intended result. *See People v. Wells*, 664 N.E.2d 660, 664 (Ill. App. Ct. 1996) (concluding that "compelling reasons" are "reasons over which reasonable minds would not diverge").

The Court's second element recognizes that the determination of whether a reason is compelling requires balancing competing interests. *Ante* at __. Although this is true, the presumption that section 552.302 imposes ensures that the scales are not evenly balanced. Instead, as the federal common-law cases on which the Court relies recognize, the balancing test uses "scales [that] tilt decidedly toward transparency." *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011). Under the Act, as under the federal common law, the presumption in favor of transparency is "no mere paper tiger," and "[i]f not overpowering," is "nonetheless strong and sturdy." *F.T.C. v. Standard Fin. Mgmt. Co.*, 830 F.2d 404, 410 (1st Cir. 1987) (internal citation omitted). This is because the Act recognizes that, "as in so many other instances, justice is better served by sunshine than by darkness." *Id.* at 413.

Considering the statutory context and the term's common meaning, a "compelling reason" to withhold public information despite the government's failure to timely assert an exception is a reason that, under all the facts and circumstances, is so important and urgent that reasonable minds can only conclude that it clearly outweighs the Act's fundamental policy of ensuring that the public can promptly obtain its information from its government. *See Wells*, 664 N.E.2d at 664 (stating that compelling reasons are "forceful and impelling reasons irresistible in sense and purpose" that "clearly demonstrate" the proposed conclusion). In other words, a compelling reason is one that undeniably outweighs the Act's express goal of ensuring that the people (the "master") are able to promptly obtain public information from their public "servants." TEX. GOV'T CODE § 552.001(a).

8

## II.
## The City's Proposed Compelling Reasons

In these cases, the City asserts three reasons to justify withholding the information at issue. First, the City contends that a compelling reason exists because the information falls under section 552.101's exception for information that is "confidential by law, either constitutional, statutory, or by judicial decision." *Id.* § 552.101. Second, the City argues that the fact that the information is attorney-client privileged is itself a compelling reason. Finally, the City asserts that a compelling reason exists because publicly disclosing the communications would "substantially harm" the City's interests in ongoing and future contract negotiations. The Court rejects the City's first argument, accepts the second, and does not reach the third. I conclude that none of the City's asserted reasons are compelling under section 552.302.

### A.      Section 552.101: "confidential by law"

The City first contends that a compelling reason exists because section 552.101 excepts attorney-client communications from the Act's disclosure requirement. *Id.* § 552.101 (providing a general exception for information that is "considered to be confidential by law, either constitutional, statutory, or by judicial decision").[9] The City makes this argument because Texas Attorneys General have long held that section 552.101 itself provides a compelling reason to withhold information under section 552.302. Unlike the City, however, they have construed

---

[9] Although the City acknowledges that the rules of evidence currently provide the basis for the confidentiality of attorney-client communications, *see generally* TEX. R. EVID. 503, it contends that the rules merely codify judicial decisions that first recognized the attorney-client privilege as a matter of common law. *See In re City of Georgetown*, 53 S.W.3d 328, 332 (Tex. 2001) (explaining that the "rules of procedure and evidence, as well as the statutes that preceded them, have embodied work-product and attorney-client privileges that have long been part of the common law"). Thus, according to the City, attorney-client communications are "considered confidential by law" that exists "by judicial decisions," and thus section 552.101 applies and excepts them from the Act's disclosure requirement. TEX. GOV'T CODE § 552.101.

9

section 552.101 to except only information that is confidential in a "mandatory" sense, meaning the law *prohibits* the government from disclosing the information even if it wanted to disclose it. *See* Tex. Att'y Gen. Op. ORD-676 at 2 (2002); Tex. Att'y Gen. Op. ORD-665 at 1 n.5 (2000); Tex. Att'y Gen. Op. ORD-400 at 1 (1983); Tex. Att'y Gen. Op. ORD-325 at 1 (1982).

The Attorney General contends that section 552.101 does not apply to attorney-client communications because they are subject only to "discretionary" or "permissive" confidentiality, in the sense that a governmental body may withhold its own attorney-client communications but is not prohibited from voluntarily disclosing them. *See* Tex. Att'y Gen. Op. ORD-676 at 2 (explaining that the privilege "rests with the client governmental body, and like any client, the governmental body is free to waive it"); *see also* Tex. Att'y Gen. Op. ORD-522 at 4 (1989) (distinguishing "information 'deemed confidential by law'" from permissive exceptions "that protect information that may be disclosed at the discretion of governmental bodies"). Instead, the Attorney General asserts that only section 552.107 excepts attorney-client communications from required disclosure. *See* TEX. GOV'T CODE § 552.107 (excepting "information that the attorney general or an attorney of a political subdivision is prohibited from disclosing because of a duty to the client under the Texas Rules of Evidence or the Texas Disciplinary Rules of Professional Conduct"). Alternatively, if section 552.101 broadly encompasses permissive as well as mandatory confidentiality, the Attorney General argues that only mandatory confidentiality constitutes a compelling reason and a governmental body's own attorney-client communications are never mandatorily confidential.

The Court does not decide whether section 552.101 excepts attorney-client communications or itself constitutes a compelling reason as the City contends, concluding instead

that the existence of a compelling reason "does not turn on whether the attorney-client privilege falls within one statutory exception or another." *Ante* at \_\_. According to the Court, "the attorney-client privilege, which is protected by one or more statutory exceptions to public disclosure, protects and advances interests that provide independently compelling reasons to withhold privileged information unless confidentiality has been waived." *Ante* at \_\_ (footnote omitted). I reject the City's argument because the existence of a compelling reason does not turn merely on the basis for any of the Act's exceptions at all.

Construing sections 552.301 and 552.302 together within their statutory context, the Act permits the government to withhold public information despite its failure to timely and properly request the Attorney General's decision *only* if an exception applies *and* a compelling reason exists. Under the Act, public information is *always* "presumed to be subject to required public disclosure," and only an exception can overcome that presumption. TEX. GOV'T CODE §§ 552.021, .301(a), .302; *see also id.* § 552.306 (providing that the Attorney General's role is to determine "whether the requested information is within one of the exceptions"). Nothing in section 552.302 or the remainder of the Act suggests that a governmental body can withhold information by showing a compelling reason *instead of* an applicable exception after it failed to timely comply with section 552.301. That construction would ignore the relationship between the two sections and encourage the government to intentionally refuse to comply with section 552.301 whenever it concludes that no exception applies.

Instead, when a governmental body fails to timely and properly request the Attorney General's decision "about whether the information is within [an] exception," *id.* § 552.301(a), section 552.302 imposes an additional presumption that applies *even though* an exception

11

overcomes the foundational presumption favoring disclosure. Although an applicable exception overcomes the Act's foundational presumption of openness, the governmental body's failure to timely and properly assert that exception results in a new presumption that the information remains "subject to required public disclosure and must be released unless there is a compelling reason to withhold the information." *Id.* § 552.302. Section 552.302, in other words, imposes an *additional* requirement—not an *alternative* requirement—that applies when a governmental body fails to timely assert an applicable exception as section 552.301 requires. As a result, the mere fact that one of the Act's exceptions applies *or* that a compelling reason exists is insufficient to overcome the government's failure to timely and properly assert an exception, because the Act requires both. *Id.*

The Court agrees that the Act always requires an exception to avoid disclosure and that establishing a compelling reason without also establishing an applicable exception is insufficient. *Ante* at __ (affirming that "even under the compelling-reason standard, information cannot be withheld unless a statutory exception applies, because public information remains public unless it is expressly excepted from disclosure."); *see also ante* at __ ("[S]ection 552.302's 'compelling reason' safeguard applies only to information the [Act] already excepts from disclosure."). But the Court concludes that merely establishing an exception is *sometimes* sufficient, even though it concedes that if it were "*always*" sufficient "the compelling-reason requirement would be rendered a nullity." *Ante* at __ (emphasis added). The Court asserts that exceptions and compelling reasons are not *always* "mutually exclusive," *ante* at __, and rejects "the notion that statutory exceptions are categorically distinct from compelling reasons and that something more is always required to

12

rebut the presumption that arises from a governmental body's failure to timely request an attorney general decision," *ante* at __.

The Court goes on, however, to conclude that an exception and a compelling reason are *never* mutually exclusive when the attorney-client privilege is at stake, and that the exception for attorney-client communications is categorically and always a compelling reason, regardless of the facts and circumstances of the particular case. Yet the Court can provide no statutory basis for deciding when the interests that an exception protects are categorically compelling and when they are not. Instead, based solely on its own view of the attorney-client privilege's importance, the Court concludes that the privilege—which the Act treats as the basis for an exception under section 552.301—also constitutes a compelling reason under section 552.302. *Ante* at __. When the attorney-client privilege is at issue, in other words, the Court is willing to render the compelling-reason requirement "a nullity." *Ante* at __.

Contrary to the Court's approach, the Act treats each of its exceptions equally. Each exception applies only if a particular set of facts exists.[10] Under the Act, those facts establish an applicable exception that the government may assert under section 552.301; and if it fails to timely and properly assert the exception and the facts that establish it, section 552.302 requires a compelling reason in addition to the exception, regardless of which exception applies. While the Court asserts that, in "some instances, important policies and interests that animate a statutory exception are compelling *in their own right*," *ante* at __, it then holds that the interests that animate

---

[10] If, for example, the facts establish that requested information is in a government employee's personnel file and its "disclosure would constitute a clearly unwarranted invasion of personal privacy," section 552.102 excepts it from the Act's disclosure requirement. TEX. GOV'T CODE § 552.102(a). If the information relates to "litigation of a civil or criminal nature to which the state or a political subdivision is or may be a party," section 552.103 excepts it from disclosure. *Id.* § 552.103(a). And if the information "deals with" the "prosecution of crime" and its release would "interfere with" that prosecution, section 552.108 excepts it from disclosure. *Id.* § 552.108(a).

13

the attorney-client privilege are compelling in *all* instances. Based on the Act's language, context, and structure, and honoring its mandate that we construe its language "liberally . . . in favor of granting a request for information," TEX. GOV'T CODE § 552.001(b), an exception to the Act's disclosure requirement cannot always independently establish a compelling reason to withhold the information when the government fails to timely and properly assert the exception. Otherwise, as the Court concedes, section 552.302 is rendered a "nullity" because *we* think "the interests that animate a statutory exception" are important enough. Under the Act, section 552.302 requires "something more."

That "something more" is a "compelling reason," and whether it exists depends on the particular facts and circumstances of each individual case. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978) (holding that the determination of whether a compelling reason exists to grant public access to judicial records must be determined "in light of the relevant facts and circumstances of the particular case"); *Standard Fin. Mgmt.*, 830 F.2d at 410–11 (same) (quoting *Nixon,* 435 U.S. at 599); *Compelling Need*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Generally, courts decide whether a compelling need is present based on the unique facts of each case."). I thus agree with the Court's rejection of the Attorney General's long-held position that only two reasons can ever qualify as compelling under section 552.302. *See ante* at __.[11] Instead, to determine whether a compelling reason exists in any given case, courts must "analyze in detail,

---

[11] Texas Attorneys General have repeatedly held that a compelling reason exists only if either (1) the information is subject to "mandatory" confidentiality, or (2) release of the information would implicate or harm a third party's interests. *See, e.g.*, Tex. Att'y Gen. Op. ORD-676 at 1 (2002); Tex. Att'y Gen. Op. ORD-630 at 2 (2002); Tex. Att'y Gen. Op. ORD-150 at 2 (1977). But the Act's plain language limits the qualifying reasons not to any specific reasons or types of reasons, but to any reason that is "compelling." We cannot judicially amend this plain language to limit the Act's scope, despite the Attorney General's office's longstanding practice of doing so.

document by document, the propriety of secrecy, providing reasons and legal citations" that justify withholding each particular document. *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016) (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)). And any decision to withhold any particular document "must be narrowly tailored to serve that reason." *Id.* (quoting *Baxter*, 297 F.3d at 548). When a compelling reason is required, "[b]road and general findings . . . are not sufficient to justify closure." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (1987)). Broadly establishing an exception does not demonstrate at the particular-document level a compelling reason for withholding.

In other words, establishing an exception does not end the analysis; it begins it. The same facts and circumstances supporting an exception can also be relevant to establishing a compelling reason, but the compelling-reason analysis requires more than a generalized claim. It requires proof of *particular* circumstances such that no reasonable person would demand the documents' production. Thus, regardless of whether section 552.101 excepts privileged attorney-client communications from the Act's disclosure requirement as the City contends, the fact that information is excepted under any of the Act's exceptions does not itself provide a compelling reason under section 552.302.

## B.     The Attorney-Client Privilege

The City next argues that the fact that the attorney-client privilege protects the communications is itself a compelling reason to withhold the communications despite the City's failure to timely request the Attorney General's decision. The Court agrees, holding that "absent waiver, the interests protected by the attorney-client privilege are sufficiently compelling to rebut

15

the public-disclosure presumption that arises on expiration of the [Act]'s ten-day deadline." *Ante* at __. To reach this result, the Court attempts to distinguish between an exception to disclosure and the "policies and interests that animate" the exception, holding that the policies and interests can constitute a compelling reason even if the exception itself cannot. *Ante* at __. Because the Act treats the policies and interests as the basis for the exception, however, this is a distinction without a difference. Ultimately, the Court's holding substitutes the Court's own preference for balancing the competing interests for the approach the Act requires. And even if the interests that an exception protects under section 552.301 could also constitute a compelling reason under section 552.302, the Court both undervalues the interests that section 552.302 protects and overvalues the interests the privilege protects to reach the result the Court desires.

1.      **The Act's approach to balancing the competing interests**

The Court bases its conclusion on its view that the interests the attorney-client privilege protects are "of utmost importance." *Ante* at __. Like the Court, the Act recognizes the importance of these interests, but it protects them by excepting privileged attorney-client communications from its disclosure requirement. As the Court itself explains, the Act

> addresses the competing values of transparency and the need for confidentiality *by excepting* confidential attorney-client communications from mandatory public disclosure. In doing so, the [Act] recognizes the importance of the attorney-client privilege and affirms that the public interest is best served when those sworn to protect it are guided by fully informed legal advice in conducting public affairs.

*Ante* at __ (emphasis added).

In this and every other relevant sense, the Act treats confidential attorney-client communications the same as all other confidential information. The Act provides numerous

16

specific exceptions for particular types of confidential information,[12] and a broad exception for all

information that is "considered to be confidential by law, either constitutional, statutory, or by

judicial decision." TEX. GOV'T CODE § 552.101. As the Court notes, the Act provides these

exceptions because it recognizes the importance of "the individual and other interests at stake in

disclosing that information." *Ante* at __ (quoting *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers,*

*L.P.*, 343 S.W.3d 112, 114 (Tex. 2011)).

But the Act also recognizes and protects the broader interests that support the public's right

to promptly access public information. The Act's very existence is a tribute to the "fundamental

philosophy" that "government is the servant and not the master of the people," and "that each

person is entitled, unless otherwise expressly provided by law, at all times to complete information

---

[12] *See* TEX. GOV'T CODE §§ 552.102 (certain personnel information); .1081 (certain information regarding those who participate in the execution of a convict); .1085 (sensitive crime scene images); .109 (certain private "correspondence or communications of an elected office holder"); .110 (trade secrets and certain commercial or financial information); .113 (geological or geophysical information); .114 (student records); .115 (birth and death records); .117 ("certain addresses, telephone numbers, social security numbers, and personal family information"); .1175 (certain personal identifying information of peace officers, county jailers, and others); .1176 (certain information regarding members of the State Bar); .118 ("information on or derived from an official prescription form or electronic prescription record filed with the Texas State Board of Pharmacy"); .119 (certain photographs of peace officers); .120 (certain rare books and original manuscripts); .121 (certain documents held for historical research); .123 (the name of an applicant for chief executive officer of an institution of higher education); .1235 (the identity of a private donor to an institution of higher education); .124 (the records of a library or library system); .126 (the name of an applicant for superintendent of a public school district); .127 (personal information relating to participants in a neighborhood crime watch organization); .128 (certain information submitted by a potential vendor or contractor); .129 (certain motor-vehicle inspection information); .130 (certain motor-vehicle records); .131 (certain economic-development information); .132 (crime victim or claimant information); .1325 (certain information in a crime-victim impact statement); .133 (public power utility competitive matters); .134 (certain information relating to an inmate of the Department of Criminal Justice); .135 (certain information held by a school district); .136 (credit card, debit card, charge card, and access device numbers); .137 (certain email addresses); .138 (information regarding a family violence shelter, victims of trafficking shelter center, or sexual assault program); .139 (information related to security or infrastructure issues for computers); .140 (military discharge records); .141 (information in an application for a marriage license); .142 (records subject to a nondisclosure order); .143 (certain investment information); .145 (the Texas no-call list); .146 (certain communications with legislative budget board employees); .147 (social security numbers); .148 (certain personal information maintained by a municipality pertaining to a minor); .149 (records that the comptroller or an appraisal district received from a private entity); .150 (information that could compromise the safety of a hospital district officer or employee); .151 (information regarding select bioterrorism agents); .152 (information concerning the personal safety of a public employee or officer); .155 (certain property tax appraisal photographs); .156 (continuity of operations plans).

about the affairs of government and the official acts of public officials and employees, . . . so that they may retain control over the instruments they have created." TEX. GOV'T CODE § 552.001(a). The Act protects these "fundamental" interests by requiring governmental bodies to respond to a request for public information "promptly, . . . as soon as possible under the circumstances, . . . within a reasonable time, [and] without delay." *Id.* § 552.221(a).

An inherent conflict exists between the interests in granting an attorney-client privilege to the government and the interests in granting the public prompt access to public information. Granting evidentiary privileges to the government necessarily undermines the goal of ensuring that the "people remain in control of their government" by creating a risk "that a broad array of materials in many areas of the executive branch will become 'sequester[ed]' from public view." *In re Bruce Lindsey*, 158 F.3d 1263, 1274 (D.C. Cir. 1998) (quoting *In re Sealed Case*, 121 F.3d 729, 749 (D.C. Cir. 1997)). Carefully balancing these inherently conflicting interests, the Act protects the government's privileged attorney-client communications by providing an exception to the disclosure requirement, but it does not permit the government to unilaterally withhold communications based on that exception. To protect the broader interests in the public's right to promptly access public information, the government must ask the Attorney General to decide whether the exception for attorney-client communications applies within ten business days. TEX. GOV'T CODE § 552.301(b). Under the Act's approach, if the government fails to timely ask for the Attorney General's decision, the communications "must be released unless there is a compelling reason to withhold" them, *even though they are privileged and the exception applies*. *Id.* § 552.302. By contrast, under the Court's approach, the communications need not be disclosed because they

are privileged and the exception applies, *even though the government failed to timely ask for the Attorney General's decision*.

### 2. The public's interest in *prompt* disclosure

Applying its balancing test, the Court concludes that the only public-information interest that the government's failure to timely assert the privilege implicates is the public's interest in "expediency." *Ante* at __; *see also ante* at __ (holding that the government's failure to timely comply with section 552.301 only "implicates the public's interest in the 'prompt' production of public information"). According to the Court, this interest carries little weight because the government's failure to timely assert the privilege leads only to "delay" and "gamesmanship and obstructionism." *Ante* at __. "When weighed against the need for expediency," the Court concludes, "the interests protected by the attorney-client privilege—and the irremediable consequences of disclosure—are demonstrably more compelling." *Ante* at __.

This analysis ignores the value the Act expressly and repeatedly places on what the Court calls "expediency." The Act contains numerous provisions that demonstrate the importance it places on the public's interest in *prompt* access to public information. The Act expressly recognizes that the public is entitled "*at all times* to complete information about the affairs of government." TEX. GOV'T CODE § 552.001(a) (emphasis added). Its foundational provision requires governmental bodies to make public information "available to the public *at a minimum during the normal business hours of the governmental body*." *Id.* § 552.021 (emphasis added). When the government receives a request for public information, the Act expressly requires that it provide the information "promptly," which the Act defines to mean "as soon as possible under the circumstances, that is, within a reasonable time, without delay." *Id.* § 552.221(a). Numerous other

19

provisions also demonstrate the Act's recognition that, when it comes to the public's right to public information, time is of the essence:

- If the government cannot provide information within ten business days after the date the information is requested, it must "certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available for inspection or duplication," *id.* § 552.221(d);

- If the government determines that responding to the request requires "programming or manipulation of data," it must provide the requestor written notice of that determination within twenty days after it receives the request, *id.* § 552.231;

- If the government determines that its costs to comply with the request will exceed a predetermined limit, it must provide a written estimate to the requestor "on or before the 10th day after the date on which the public information was requested," *id.* § 552.275(e);

- If the request seeks a third party's proprietary information that may be subject to an exception, the government "shall make a good faith attempt to notify that person . . . within a reasonable time not later than the 10th business day after" it receives the request, *id.* § 552.305(d);

- If a person files a complaint with a district or county attorney complaining of a violation of the Act, the district or county attorney shall respond to the complaint "[b]efore the 31st day after the date a complaint is filed," *id.* § 552.3215(g);

- The district or county attorney must notify the government before filing suit, and to avoid that suit, the government must cure the violation "before the fourth day after the date" the government receives the notice, *id.* § 552.3215(j);

- If the government believes the Act excepts requested information from its disclosure requirement, it must ask the Attorney General to decide whether an exception applies "within a reasonable time but not later than the 10th business day after the date of receiving the written request," *id.* § 552.301(b);

- If the Attorney General notifies the government that he needs additional information to make his decision, the government "shall submit the necessary additional information to the attorney general not later than the seventh calendar day after the date the notice is received," *id.* § 552.303(d);

- The Attorney General must "promptly render a decision . . . determining whether the requested information is within one of the exceptions," not "later than the 45th

20

business day after" the Attorney General received the request for decision, *id.* § 552.306(a); and

- If the government decides to sue to challenge the Attorney General's decision, it must "bring the suit not later than the 30th calendar day after" it receives the Attorney General's decision; otherwise, it "shall comply with" the Attorney General's decision, *id.* § 552.324(b).[13]

In short, when it comes to the public's right to public information, the Act recognizes that access delayed is usually access denied. As the federal-court decisions on which the Court relies acknowledge, "a necessary corollary to the presumption [in favor of government transparency] is that once found to be appropriate, access should be immediate and contemporaneous. . . . To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir. 1994).[14]

In light of the Act's repeated emphasis on *timely* access, the Court's attempt to minimize that interest by suggesting that the requestor or the Attorney General can simply file suit to compel disclosure borders the absurd. *Ante* at __. By requiring the government to timely seek the Attorney

---

[13] Many other provisions impose similar time deadlines that apply in specific circumstances. *See, e.g.*, *id.* §§ 552.008(b-2) (requiring Attorney General to establish briefing deadlines for disputes involving information sought for legislative purposes and to decide such disputes "not later than the 45th business day after the date the attorney general received the request for a decision"); .024(c-1) (same for disputes over redacted information regarding government employees); .130(d) (same for redacted information regarding motor vehicle records); .136(d) (same for redacted information regarding credit cards and similar access cards); .138(d) (same for redacted information regarding family violence and sexual assaults); *see also id.* §§ 552.1085(f) (requiring government to notify next of kin regarding a request for a sensitive crime scene image not "later than the 10th business day after" the government receives the request); .1175(g) (same for disputes over redacted information regarding peace officers, judges, and others); .269(a) (requiring government to "promptly" adjust the amount charged for copies of information in accordance with the Attorney General's determination).

[14] *See also Lugosch*, 435 F.3d at 123 ("Our public access cases and those in other circuits emphasize the importance of *immediate* access where a right to access is found.") (emphasis added); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 664 (3d Cir. 1991) (holding that the public interest in access to public information "encompasses the public's ability to make a *contemporaneous* review of the basis of an important decision of the district court") (emphasis added); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1310 (7th Cir. 1984) ("The presumption of access normally involves a right of *contemporaneous* access.") (emphasis added).

General's decision on whether an exception applies, the Act seeks to avoid the very delays that such a suit will inevitably cause. "Indeed, for the presumptive right [of access] to be suspended or nonexistent until after the judge has ruled on a motion, would be to impair the important interest in contemporaneous review by the public . . . ." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 101 F.R.D. 34, 43 (C.D. Cal. 1984) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980)). "The public cannot properly monitor the work of the courts with long delays in adjudication based on secret documents." *Lugosch*, 435 F.3d at 127. When "fundamental" interests like those the Act protects are at stake, the loss of a protected right, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Paulsen v. Cty. of Nassau,* 925 F.2d 65, 68 (2d Cir. 1991) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (addressing First Amendment rights)).

Section 552.302's compelling-reason requirement itself demonstrates the importance the Act places on the public's interest in *prompt* access to public information. Section 552.302 protects that interest by imposing the compelling-reason requirement as a consequence for the government's failure to timely assert an exception. The Court asserts that "the interests protected by the attorney-client privilege . . . are demonstrably more compelling" than the public's interest in prompt access to public information because the consequences of disclosure are "irremediable" and the public "has no right of access to privileged information in the first instance and only a rebuttable presumption of access in the second." *Ante* at __. But the same is true for all information the Act excepts from its disclosure requirement. Section 552.302's compelling-reason requirement *only* applies when an exception applies and "the public has no right of access to the information in the first instance and only a rebuttable presumption of access in the second." Section 552.302

22

places such great weight on the public's right to prompt access that it requires disclosure of information *even though* it is privileged, confidential, and excepted, unless a compelling reason exists.

Under the Court's reasoning, the interests that support *any* of the Act's exceptions will *always* outweigh the public's interest in prompt access, because the public never has "a right of access" to excepted information, and the release of that information will always result in a loss of confidentiality that is "irremediable." Under the Court's approach, every exception always satisfies the compelling-reason requirement and thus nullifies the requirement completely. The Act, however, places such great value on prompt access to public information that it requires the information to be disclosed unless a compelling reason exists, even though the public has no right to the information and the loss of confidentiality would be irremediable.

### 3. The government's interest in the attorney-client privilege

According to the Court, the interests that support the attorney-client privilege always and necessarily outweigh the public's interest in prompt access to public information because the privilege protects both the "free flow of information between attorney and client" and "the broader societal interest of effective administration of justice." *Ante* at __; *see also ante* at __ (explaining that the privilege's purpose is to "encourage clients to make full disclosure to their attorneys" (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976))), __ (stating that the privilege preserves "the just and orderly operation of our legal system" (quoting *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997))). But the Court fails to consider these interests within the context of the fact that *the government* has no inherent right to any attorney-client privilege.[15] In Texas,

---

[15] The Court asserts that, when the government itself is the client whose communications are at issue, the

23

the Act both grants that right to the government and imposes limitations on that right, one of which requires the government to properly assert any applicable exception within ten business days after receiving the public's request for its information. *See* TEX. GOV'T CODE § 552.301. This limitation does not exist when a private party asserts the privilege on its own behalf. Under the Act, the privilege is subject to different limitations when *the government* relies on the privilege to withhold *public* information.

For this reason, the Court's reliance on a lack of "waiver" under its own common-law and procedural rules is misplaced. *See ante* at __ (holding that the attorney-client privilege is a compelling reason under section 552.302 unless it has been waived, and the failure to meet section 552.301's deadline "does not, in and of itself, constitute waiver").[16] The Court concludes that the attorney-client privilege is always a compelling reason under the Act because "[m]erely missing a statutory deadline does not mirror any of the conduct our rules and case law recognize as waiving a privilege." *Ante* at __. But "our rules and case law" do not apply here, and sections 552.301 and

---

privilege applies with "special force" because it protects the public's interest by encouraging government officials to seek legal advice when formulating public policy and conducting government business "on behalf of the public." *Ante* at __ (quoting *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). But the Court ignores that when the government asserts the privilege, the presumption that favors the public's interest in prompt access is equally accentuated. *See Standard Fin. Mgmt.*, 830 F.2d at 410 (noting that the "appropriateness of making court files accessible is accentuated in cases where the government is a party"); *In re Application of Nat'l Broad. Co.*, 635 F.2d 945, 952 (2d Cir. 1980) ("The presumption is especially strong in a case . . . where the evidence shows the actions of public officials."). Just as the government ultimately acts on behalf of the public, the information it possesses belongs to the public, and the public, "in delegating [that] authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know." TEX. GOV'T CODE § 552.001(a). Instead, the people, acting through their elected legislators, have decided whether to grant governmental bodies the right to claim the attorney-client privilege as a basis for concealing the public's information from the public. As a result, certain "limitations to the government attorney-client privilege . . . may render an otherwise protectable communication unprotected." *Cnty. of Erie*, 473 F.3d at 448 n.5.

[16] *See also ante* at __ (holding that the privilege protects interests that are "independently compelling reasons to withhold privileged information unless confidentiality has been waived").

552.302 speak nothing of "waiver" at all.[17] The government's failure to timely comply with section 552.301 does not "waive" the privilege, and the information therefore remains subject to an applicable exception. But because the government failed to timely assert the privilege as the Act requires, section 552.302 requires it to release the information even though it is privileged and excepted from required disclosure, unless a compelling reason exists to withhold it. TEX. GOV'T CODE §§ 552.301, .302. Under the Act, whether the government has "waived" the privilege under our common law and rules is irrelevant to the compelling-reason issue. Instead, the issue is whether there is a compelling reason to withhold the information despite the government's failure to timely and properly assert that it is privileged and confidential.

Ultimately, the Court concludes that the attorney-client privilege is always independently a compelling reason that outweighs the public's interest in prompt access to public information because the harm that results from a loss of the privilege "threatens the foundation of a justice system that thrives on full and candid legal representation." *Ante* at __. According to the Court, if the Act requires the government to disclose its attorney-client communications when its employees miss a deadline through mere oversight, mistake, or inadvertence, "governmental entities might well choose to forego fruitful self-analysis and decide not to seek needed legal advice." *Ante* at __

---

[17] *Contrast* TEX. GOV'T CODE §§ 552.0038(f) (providing that an individual "waives the confidentiality" of records held by a public retirement system if the records become "part of the public record of an administrative or judicial proceeding related to a contested case"); .008(b) (providing that a governmental body that releases information to a legislative member, agency, or committee "does not waive or affect the confidentiality of the information" or "waive the right to assert exceptions to required disclosure of the information in the future"); .134(d) (providing that the release of the information regarding a prison inmate to certain eligible entities for law-enforcement purposes "does not waive the right to assert in the future that the information is excepted from required disclosure"); .156(d) (providing that the disclosure of information regarding an agency's continuity of operations plan "to another governmental body or a federal agency . . . does not waive or affect the confidentiality of that information"); *see also id.* § 552.326(a) (providing generally that "the only exceptions a governmental body may raise in a suit filed under [the Act] are exceptions that the governmental body properly raised" in its request for the Attorney General's decision).

25

(quoting *City of Georgetown*, 53 S.W.3d at 333). "Eviscerating the privilege by compelling disclosure in pursuit of 'promptness,'" the Court laments, "may have a wide-reaching and chilling effect on communications between governmental bodies and their counsel." *Ante* at __. These results would harm the interests of "both the governmental body and the taxpayers it represents," and would "undermine the attorney-client privilege's fundamental purpose by impairing frank discourse between a governmental body and its counsel." *Ante* at __.

The parade of horribles the Court describes might well seem compelling, if only there were some factual basis to support the Court's dire predictions. Reality, however, belies such sophistry. For more than twenty-two years, Texas Attorneys General have issued hundreds of decisions requiring governmental bodies to disclose their attorney-client communications, holding that the "mere fact that the information is within the attorney-client privilege . . . does not alone constitute a compelling reason to withhold the information from public disclosure" under section 552.302.[18] *See* Tex. Att'y Gen. Op. ORD-630 at 5 (1994).[19] Acknowledging these hundreds of Attorney-

---

[18] The Court incorrectly declares that I "repudiate" the "underlying rationale" of this construction of section 552.302. *Ante* at __. To be clear, I do not agree with the Attorneys General's long-held conclusion that only two reasons (mandatory confidentiality and harm to a third party) can ever be compelling, *see supra* n.11, but I do agree with their holding that the mere fact that information is attorney-client privileged does not constitute a compelling reason under section 552.302.

[19] *See also, e.g.*, Tex. Att'y Gen. Op. OR2016-26762 at 1 (2016); Tex. Att'y Gen. Op. OR2016-26708 at 1 (2016); Tex. Att'y Gen. Op. OR2016-26782 at 2 (2016); Tex. Att'y Gen. Op. OR2016-26355 at 1 (2016); Tex. Att'y Gen. Op. OR2016-26022 at 1 (2016); Tex. Att'y Gen. Op. OR2016-25036 at 1 (2016); Tex. Att'y Gen. Op. OR2016-24517 at 1 (2016); Tex. Att'y Gen. Op. OR2016-24334 at 2 (2016); Tex. Att'y Gen. Op. OR2016-23955 at 2 (2016); Tex. Att'y Gen. Op. OR2016-23689 at 1 (2016); Tex. Att'y Gen. Op. OR2016-23232 at 2 (2016); Tex. Att'y Gen. Op. OR2016-22178 at 1 (2016); Tex. Att'y Gen. Op. OR2016-21609 at 2 (2016); Tex. Att'y Gen. Op. OR2016-20676 at 1 (2016); Tex. Att'y Gen. Op. OR2016-19742 at 2 (2016); Tex. Att'y Gen. Op. OR2016-16274 at 2 (2016); Tex. Att'y Gen. Op. OR2016-15596 at 1 (2016); Tex. Att'y Gen. Op. OR2016-13176 at 2 (2016); Tex. Att'y Gen. Op. OR2016-11856 at 1 (2016); Tex. Att'y Gen. Op. OR2016-09021 at 2 (2016); Tex. Att'y Gen. Op. OR2016-06110 at 2 (2016); Tex. Att'y Gen. Op. OR2016-04321 at 1 (2016); Tex. Att'y Gen. Op. OR2016-03008 at 1 (2016); Tex. Att'y Gen. Op. OR2016-00799 at 2 (2016); Tex. Att'y Gen. Op. OR2015-27069 at 1 (2015); Tex. Att'y Gen. Op. OR2015-26538 at 2 (2015); Tex. Att'y Gen. Op. OR2015-26325 at 2 (2015); Tex. Att'y Gen. Op. OR2015-23096 at 1 (2015); Tex. Att'y Gen. Op. OR2015-22782 at 1(2015); Tex. Att'y Gen. Op. OR2015-21206 at 1 (2015); Tex. Att'y Gen. Op. OR2015-21273 at 1 (2015); Tex. Att'y Gen. Op. OR2015-21250 at 1 (2015); Tex. Att'y Gen. Op. OR2015-20022

at 2 (2015); Tex. Att'y Gen. Op. OR2015-19528 at 1 (2015); Tex. Att'y Gen. Op. OR2015-18374 at 1 (2015); Tex. Att'y Gen. Op. OR2015-16995 at 1 (2015); Tex. Att'y Gen. Op. OR2015-16428 at 1 (2015); Tex. Att'y Gen. Op. OR2015-11264 at 1 (2015); Tex. Att'y Gen. Op. OR2015-11026 at 1 (2015); Tex. Att'y Gen. Op. OR2015-10858 at 1 (2015); Tex. Att'y Gen. Op. OR2015-09177 at 1 (2015); Tex. Att'y Gen. Op. OR2015-08783 at 1 (2015); Tex. Att'y Gen. Op. OR2015-08104 at 1 (2015); Tex. Att'y Gen. Op. OR2015-07847 at 1 (2015); Tex. Att'y Gen. Op. OR2015-06823 at 1 (2015); Tex. Att'y Gen. Op. OR2015-06582 at 1 (2015); Tex. Att'y Gen. Op. OR2015-06121 at 1 (2015); Tex. Att'y Gen. Op. OR2015-05774 at 1 (2015); Tex. Att'y Gen. Op. OR2015-05223 at 2 (2015); Tex. Att'y Gen. Op. OR2015-04386 at 2 (2015); Tex. Att'y Gen. Op. OR2015-04356 at 1 (2015); Tex. Att'y Gen. Op. OR2015-03323 at 2 (2015); Tex. Att'y Gen. Op. OR2015-01280 at 1 (2015); Tex. Att'y Gen. Op. OR2015-00851 at 2 (2015); Tex. Att'y Gen. Op. OR2014-22569 at 1 (2014); Tex. Att'y Gen. Op. OR2014-20386 at 2 (2014); Tex. Att'y Gen. Op. OR2014-18679 at 2 (2014); Tex. Att'y Gen. Op. OR2014-17855 at 1 (2014); Tex. Att'y Gen. Op. OR2014-16893 at 1 (2014); Tex. Att'y Gen. Op. OR2014-16682 at 2 (2014); Tex. Att'y Gen. Op. OR2014-16253 at 1 (2014); Tex. Att'y Gen. Op. OR2014-16253 at 1 (2014); Tex. Att'y Gen. Op. OR2014-12075 at 2 (2014); Tex. Att'y Gen. Op. OR2014-12072 at 2 (2014); Tex. Att'y Gen. Op. OR2014-11614 at 1 (2014); Tex. Att'y Gen. Op. OR2014-11382 at 1 (2014); Tex. Att'y Gen. Op. OR2014-11296 at 2 (2014); Tex. Att'y Gen. Op. OR2014-10699 at 2 (2014); Tex. Att'y Gen. Op. OR2014-10477 at 1 (2014); Tex. Att'y Gen. Op. OR2014-10424 at 1 (2014); Tex. Att'y Gen. Op. OR2014-08748 at 3 (2014); Tex. Att'y Gen. Op. OR2014-07913 at 1 (2014); Tex. Att'y Gen. Op. OR2014-07208 at 1 (2014); Tex. Att'y Gen. Op. OR2014-06251 at 1 (2014); Tex. Att'y Gen. Op. OR2014-05700 at 2 (2014); Tex. Att'y Gen. Op. OR2014-04581 at 3 (2014); Tex. Att'y Gen. Op. OR2014-04344 at 2 (2014); Tex. Att'y Gen. Op. OR2014-04134 at 1 (2014); Tex. Att'y Gen. Op. OR2014-03504 at 2 (2014); Tex. Att'y Gen. Op. OR2014-00789 at 1 (2014); Tex. Att'y Gen. Op. OR2014-00816 at 1 (2014); Tex. Att'y Gen. Op. OR2013-17978 at 1 (2013); Tex. Att'y Gen. Op. OR2013-17964 at 1 (2013); Tex. Att'y Gen. Op. OR2013-17799 at 1 (2013); Tex. Att'y Gen. Op. OR2013-15173 at 3 (2013); Tex. Att'y Gen. Op. OR2013-14328 at 1 (2013); Tex. Att'y Gen. Op. OR2013-13319 at 3 (2013); Tex. Att'y Gen. Op. OR2013-13170 at 2 (2013); Tex. Att'y Gen. Op. OR2013-12677 at 1 (2013); Tex. Att'y Gen. Op. OR2013-12690 at 1 (2013); Tex. Att'y Gen. Op. OR2013-12142 at 2 (2013); Tex. Att'y Gen. Op. OR2013-09446 at 3 (2013);Tex. Att'y Gen. Op. OR2013-09181 at 1 (2013); Tex. Att'y Gen. Op. OR2013-08067 at 1 (2013); Tex. Att'y Gen. Op. OR2013-07113 at 1 (2013); Tex. Att'y Gen. Op. OR2013-05127 at 1 (2013); Tex. Att'y Gen. Op. OR2013-03626 at 2 (2013); Tex. Att'y Gen. Op. OR2013-03522 at 2 (2013); Tex. Att'y Gen. Op. OR2013-03235 at 2 (2013); Tex. Att'y Gen. Op. OR2013-01354 at 1 (2013); Tex. Att'y Gen. Op. OR2013-01014 at 2 (2013); Tex. Att'y Gen. Op. OR2012-19685 at 1 (2012); Tex. Att'y Gen. Op. OR2012-18133 at 2 (2012); Tex. Att'y Gen. Op. OR2012-16940 at 1 (2012); Tex. Att'y Gen. Op. OR2012-16170 at 1 (2012); Tex. Att'y Gen. Op. OR2012-13326A at 2 (2012); Tex. Att'y Gen. Op. OR2012-15343 at 1 (2012); Tex. Att'y Gen. Op. OR2012-15268 at 1 (2012); Tex. Att'y Gen. Op. OR2012-14586 at 1 (2012); Tex. Att'y Gen. Op. OR2012-14409 at 1 (2012); Tex. Att'y Gen. Op. OR2012-13949 at 2 (2012); Tex. Att'y Gen. Op. OR2012-13326 at 2 (2012); Tex. Att'y Gen. Op. OR2012-12032 at 1 (2012); Tex. Att'y Gen. Op. OR2012-11953 at 2 (2012); Tex. Att'y Gen. Op. OR2012-11243 at 2 (2012); Tex. Att'y Gen. Op. OR2012-10820 at 1 (2012); Tex. Att'y Gen. Op. OR2012-09574 at 1 (2012); Tex. Att'y Gen. Op. OR2012-09465 at 2 (2012); Tex. Att'y Gen. Op. OR2012-09387 at 1 (2012); Tex. Att'y Gen. Op. OR2012-09099 at 1 (2012); Tex. Att'y Gen. Op. OR2012-08205 at 2 (2012); Tex. Att'y Gen. Op. OR2012-07757 at 2 (2012); Tex. Att'y Gen. Op. OR2012-07651 at 1 (2012); Tex. Att'y Gen. Op. OR2012-07149 at 1 (2012); Tex. Att'y Gen. Op. OR2012-06193 at 1 (2012); Tex. Att'y Gen. Op. OR2012-05813 at 2 (2012); Tex. Att'y Gen. Op. OR2012-04159 at 2 (2012); Tex. Att'y Gen. Op. OR2012-02452 at 2 (2012); Tex. Att'y Gen. Op. OR2012-01807 at 2 (2012); Tex. Att'y Gen. Op. OR2012-00156 at 2 (2012); Tex. Att'y Gen. Op. OR2012-18915 at 3 (2011); Tex. Att'y Gen. Op. OR2011-18675 at 3 (2011); Tex. Att'y Gen. Op. OR2011-17569 at 1 (2011); Tex. Att'y Gen. Op. OR2011-12747 at 1 (2011); Tex. Att'y Gen. Op. OR2011-11066 at 1 (2011); Tex. Att'y Gen. Op. OR2011-10068 at 1 (2011); Tex. Att'y Gen. Op. OR2011-09673 at 2 (2011); Tex. Att'y Gen. Op. OR2011-09143 at 1 (2011); Tex. Att'y Gen. Op. OR2011-08740 at 2 (2011); Tex. Att'y Gen. Op. OR2011-08057 at 2 (2011); Tex. Att'y Gen. Op. OR2011-07794 at 1 (2011); Tex. Att'y Gen. Op. OR2011-07237 at 1 (2011); Tex. Att'y Gen. Op. OR2011-07013 at 1 (2011); Tex. Att'y Gen. Op. OR2011-05559 at 2 (2011); Tex. Att'y Gen. Op. OR2011-05534 at 1 (2011); Tex. Att'y Gen. Op. OR2011-04966 at 1 (2011); Tex. Att'y Gen. Op. OR2011-04326 at 1 (2011); Tex. Att'y Gen. Op. OR2011-03582 at 1 (2011); Tex. Att'y Gen. Op. OR2011-03393 at 1 (2011); Tex. Att'y Gen. Op. OR2011-02463 at 2 (2011); Tex. Att'y Gen. Op. OR2011-02189 at 2 (2011); Tex. Att'y Gen. Op. OR2011-02059 at 1 (2011); Tex. Att'y Gen. Op. OR2011-02091 at 1 (2011); Tex. Att'y Gen. Op. OR2011-01280 at

1 (2011); Tex. Att'y Gen. Op. OR2010-18214 at 2 (2010); Tex. Att'y Gen. Op. OR2010-17492 at 1 (2010); Tex. Att'y Gen. Op. OR2010-16966 at 2 (2010); Tex. Att'y Gen. Op. OR2010-16999 at 1 (2010); Tex. Att'y Gen. Op. OR2010-15391 at 2 (2010); Tex. Att'y Gen. Op. OR2010-15134 at 2 (2010); Tex. Att'y Gen. Op. OR2010-15140 at 1 (2010); Tex. Att'y Gen. Op. OR2010-14576 at 2 (2010); Tex. Att'y Gen. Op. OR2010-13943 at 2 (2010); Tex. Att'y Gen. Op. OR2010-11553 at 1 (2010); Tex. Att'y Gen. Op. OR2010-10853 at 2 (2010); Tex. Att'y Gen. Op. OR2010-08618 at 1 (2010); Tex. Att'y Gen. Op. OR2010-07143 at 1 (2010); Tex. Att'y Gen. Op. OR2010-05908 at 1 (2010); Tex. Att'y Gen. Op. OR2010-05699 at 1 (2010); Tex. Att'y Gen. Op. OR2010-05549 at 2 (2010); Tex. Att'y Gen. Op. OR2010-05341 at 1 (2010); Tex. Att'y Gen. Op. OR2010-05203 at 2 (2010); Tex. Att'y Gen. Op. OR2010-03923 at 1 (2010); Tex. Att'y Gen. Op. OR2010-02743 at 1 (2010); Tex. Att'y Gen. Op. OR2010-02297 at 2 (2010); Tex. Att'y Gen. Op. OR2010-01967 at 1 (2010); Tex. Att'y Gen. Op. OR2010-00243 at 2 (2010); Tex. Att'y Gen. Op. OR2010-00016 at 1 (2010); Tex. Att'y Gen. Op. OR2010-00062 at 1 (2010); Tex. Att'y Gen. Op. OR2009-18436 at 2 (2009); Tex. Att'y Gen. Op. OR2009-15185 at 1 (2009); Tex. Att'y Gen. Op. OR2009-14597 at 2 (2009); Tex. Att'y Gen. Op. OR2009-13743 at 1 (2009); Tex. Att'y Gen. Op. OR2009-12873 at 2 (2009); Tex. Att'y Gen. Op. OR2009-12565 at 1 (2009); Tex. Att'y Gen. Op. OR2009-10849 at 1 (2009); Tex. Att'y Gen. Op. OR2009-10866 at 1 (2009); Tex. Att'y Gen. Op. OR2009-08065 at 1 (2009); Tex. Att'y Gen. Op. OR2009-06730 at 1 (2009); Tex. Att'y Gen. Op. OR2009-02170 at 1 (2009); Tex. Att'y Gen. Op. OR2009-01585 at 1 (2009); Tex. Att'y Gen. Op. OR2009-00918 at 1 (2009); Tex. Att'y Gen. Op. OR2008-17126 at 2 (2008); Tex. Att'y Gen. Op. OR2008-16977 at 1 (2008); Tex. Att'y Gen. Op. OR2008-14701 at 2 (2008); Tex. Att'y Gen. Op. OR2008-14129 at 1 (2008); Tex. Att'y Gen. Op. OR2008-13367 at 1 (2008); Tex. Att'y Gen. Op. OR2008-11612 at 2 (2008); Tex. Att'y Gen. Op. OR2008-11260 at 1 (2008); Tex. Att'y Gen. Op. OR2008-10164 at 1 (2008); Tex. Att'y Gen. Op. OR2008-10171 at 1 (2008); Tex. Att'y Gen. Op. OR2008-09698 at 2 (2008); Tex. Att'y Gen. Op. OR2008-08426 at 1 (2008); Tex. Att'y Gen. Op. OR2008-05855 at 2 (2008); Tex. Att'y Gen. Op. OR2008-03729 at 2 (2008); Tex. Att'y Gen. Op. OR2008-03147 at 2 (2008); Tex. Att'y Gen. Op. OR2008-02997 at 2 (2008); Tex. Att'y Gen. Op. OR2008-02110 at 1 (2008); Tex. Att'y Gen. Op. OR2008-02077 at 2 (2008); Tex. Att'y Gen. Op. OR2007-01735 at 2 (2008); Tex. Att'y Gen. Op. OR2007-16841 at 1 (2007); Tex. Att'y Gen. Op. OR2007-16838 at 2 (2007); Tex. Att'y Gen. Op. OR2007-14762 at 1 (2007); Tex. Att'y Gen. Op. OR2007-14425 at 1 (2007); Tex. Att'y Gen. Op. OR2007-14260 at 1 (2007); Tex. Att'y Gen. Op. OR2007-13579 at 2 (2007); Tex. Att'y Gen. Op. OR2007-13435 at 1 (2007); Tex. Att'y Gen. Op. OR2007-13034 at 2 (2007); Tex. Att'y Gen. Op. OR2007-12910 at 1 (2007); Tex. Att'y Gen. Op. OR2007-12216 at 2 (2007); Tex. Att'y Gen. Op. OR2007-11453 at 1 (2007); Tex. Att'y Gen. Op. OR2007-10261 at 1 (2007); Tex. Att'y Gen. Op. OR2007-08692 at 2 (2007); Tex. Att'y Gen. Op. OR2007-08545 at 1 (2007); Tex. Att'y Gen. Op. OR2007-08534 at 1 (2007); Tex. Att'y Gen. Op. OR2007-08052 at 1 (2007); Tex. Att'y Gen. Op. OR2007-07987 at 1 (2007); Tex. Att'y Gen. Op. OR2007-07391 at 2 (2007); Tex. Att'y Gen. Op. OR2007-07094 at 1 (2007); Tex. Att'y Gen. Op. OR2007-03551 at 1 (2007); Tex. Att'y Gen. Op. OR2007-03314 at 2 (2007); Tex. Att'y Gen. Op. OR2007-01788 at 1 (2007); Tex. Att'y Gen. Op. OR2007-01354 at 1 (2007); Tex. Att'y Gen. Op. OR2007-00794 at 2 (2007); Tex. Att'y Gen. Op. OR2007-00553 at 1 (2007); Tex. Att'y Gen. Op. OR2007-00089 at 2 (2007); Tex. Att'y Gen. Op. OR2006-14584 at 2 (2006); Tex. Att'y Gen. Op. OR2006-14471 at 2 (2006); Tex. Att'y Gen. Op. OR2006-13750 at 1 (2006); Tex. Att'y Gen. Op. OR2006-13055 at 3 (2006); Tex. Att'y Gen. Op. OR2006-12538 at 2 (2006); Tex. Att'y Gen. Op. OR2006-11676 at 1 (2006); Tex. Att'y Gen. Op. OR2006-11681 at 1 (2006); Tex. Att'y Gen. Op. OR2006-09007 at 1 (2006); Tex. Att'y Gen. Op. OR2006-08109 at 1 (2006); Tex. Att'y Gen. Op. OR2006-07273 at 1 (2006); Tex. Att'y Gen. Op. OR2006-06054 at 1 (2006); Tex. Att'y Gen. Op. OR2006-04800 at 1 (2006); Tex. Att'y Gen. Op. OR2006-03925 at 1 (2006); Tex. Att'y Gen. Op. OR2006-03295 at 1 (2006); Tex. Att'y Gen. Op. OR2006-02743 at 2 (2006); Tex. Att'y Gen. Op. OR2006-02636 at 2 (2006); Tex. Att'y Gen. Op. OR2006-02437 at 1 (2006); Tex. Att'y Gen. Op. OR2006-02336 at 1 (2006); Tex. Att'y Gen. Op. OR2006-01599 at 2 (2006); Tex. Att'y Gen. Op. OR2006-01128 at 2 (2006); Tex. Att'y Gen. Op. OR2006-00587 at 2 (2006); Tex. Att'y Gen. Op. OR2005-11717 at 1 (2005); Tex. Att'y Gen. Op. OR2005-11546 at 1 (2005); Tex. Att'y Gen. Op. OR2005-10765 at 1 (2005); Tex. Att'y Gen. Op. OR2005-10610 at 2 (2005); Tex. Att'y Gen. Op. OR2005-09046 at 1 (2005); Tex. Att'y Gen. Op. OR2005-06144 at 1 (2005); Tex. Att'y Gen. Op. OR2005-05286 at 1 (2005); Tex. Att'y Gen. Op. OR2005-04375 at 2 (2005); Tex. Att'y Gen. Op. OR2005-03084 at 2 (2005); Tex. Att'y Gen. Op. OR2005-02932 at 2 (2005); Tex. Att'y Gen. Op. OR2005-02357 at 1 (2005); Tex. Att'y Gen. Op. OR2005-02011 at 1 (2005); Tex. Att'y Gen. Op. OR2005-01591 at 1 (2005); Tex. Att'y Gen. Op. OR2005-01523 at 2 (2005); Tex. Att'y Gen. Op. OR2005-01008 at 1 (2005); Tex. Att'y Gen. Op. OR2005-00970 at 1 (2005); Tex. Att'y Gen. Op. OR2005-00421 at 1 (2005); Tex. Att'y Gen. Op. OR2005-00133 at 1 (2005);

General decisions, the Court momentarily retreats from its dire predictions and suggests only that there is "no proof of" and "we do not know" the decisions' impact. *Ante* at __. Of course, even if that were true, then at best the predictions on which the Court bases its holding are mere speculation that provides no reason—much less a "compelling" reason—to withhold the information. But what the hundreds of decisions prove is that the Court's central justification for its holding is simply factually incorrect. Disproving the Court's prediction of "systemic harm," the Attorney General's consistent decisions for the past twenty-two years have not "prevented governmental bodies from seeking legal advice" or generating attorney-client communications. If that holding were likely to cause the government to "forego fruitful self-analysis and decide not to seek needed legal advice," have a "wide-reaching and chilling effect on communications between governmental bodies and their counsel," and "impair[] frank discourse between a governmental body and its counsel," surely it would have done so by now.

### 4.      Applying the Act's approach

---

Tex. Att'y Gen. Op. OR2005-00160 at 1 (2005); Tex. Att'y Gen. Op. OR2005-00161 at 1 (2005); Tex. Att'y Gen. Op. OR2004-10810 at 2 (2004); Tex. Att'y Gen. Op. OR2004-10065 at 1 (2004); Tex. Att'y Gen. Op. OR2004-9644 at 1 (2004); Tex. Att'y Gen. Op. OR2004-9141 at 1 (2004); Tex. Att'y Gen. Op. OR2004-8699 at 1 (2004); Tex. Att'y Gen. Op. OR2004-8417 at 1 (2004); Tex. Att'y Gen. Op. OR2004-8147 at 1 (2004); Tex. Att'y Gen. Op. OR2004-7620 at 1 (2004); Tex. Att'y Gen. Op. OR2004-7216 at 1 (2004); Tex. Att'y Gen. Op. OR2004-7217 at 1 (2004); Tex. Att'y Gen. Op. OR2004-7153 at 1 (2004); Tex. Att'y Gen. Op. OR2004-7128 at 2 (2004); Tex. Att'y Gen. Op. OR2004-7074 at 1 (2004); Tex. Att'y Gen. Op. OR2004-6806 at 1 (2004); Tex. Att'y Gen. Op. OR2004-6666 at 1 (2004); Tex. Att'y Gen. Op. OR2004-5123 at 1 (2004); Tex. Att'y Gen. Op. OR2004-3078 at 2 (2004); Tex. Att'y Gen. Op. OR2004-1989 at 1 (2004); Tex. Att'y Gen. Op. OR2003-9171 at 2 (2003); Tex. Att'y Gen. Op. OR2003-8737 at 1 (2003); Tex. Att'y Gen. Op. OR2003-8256 at 4 (2003); Tex. Att'y Gen. Op. OR2003-8244 at 2 (2003); Tex. Att'y Gen. Op. OR2003-6540 at 1 (2003); Tex. Att'y Gen. Op. OR2003-4062 at 3 (2003); Tex. Att'y Gen. Op. OR2003-3039 at 2 (2003); Tex. Att'y Gen. Op. OR2002-3115 at 1 (2002); Tex. Att'y Gen. Op. OR2002-0368 at 2 (2002); Tex. Att'y Gen. Op. OR2001-0888 at 1 (2001); Tex. Att'y Gen. Op. OR2000-4670 at 2 (2000); Tex. Att'y Gen. Op. OR2000-3950 at 1 (2000); Tex. Att'y Gen. Op. OR2000-2582 at 1 (2000); Tex. Att'y Gen. Op. OR2000-0359 at 3 (2000); Tex. Att'y Gen. Op. OR2000-0079 at 1 (2000); Tex. Att'y Gen. Op. OR1999-3681 at 1 (1999); Tex. Att'y Gen. Op. OR1999-3088 at 1 (1999); Tex. Att'y Gen. Op. OR1999-0975 at 1 (1999); Tex. Att'y Gen. Op. OR1995-1197 at 2 (1995).

Because neither an exception nor the interests it supports can independently qualify as a compelling reason that outweighs the public's interest in prompt access to public information under the Act, I agree with the Attorneys General that the attorney-client privilege alone cannot and does not constitute a compelling reason under section 552.302. This does not mean that section 552.302 could never permit the government to withhold attorney-client communications if the government fails to timely comply with section 552.301. As discussed, whether a compelling reason exists depends on the facts and circumstances of each case. I thus agree with the Court that "the public's interest in maintaining confidentiality [of the government's attorney-client communications] must be factored into the analysis," *ante* at __, but the compelling-reason standard requires that factoring to occur in each individual case, because the public's interest and the harmful effects of disclosure will vary from case to case.

In most cases, the relevant facts and circumstances will also include the government's diligence (or lack thereof) and the reasons for its failure to timely and properly assert the privilege. *See, e.g.*, *State v. Naylor*, 466 S.W.3d 783, 793–94 (Tex. 2015) ("A litigant's mistaken understanding of [Texas Rule of Appellate Procedure 52.3(e)] is not a compelling reason for this Court to consider an unreviewed mandamus argument."); *In re Dorn*, 471 S.W.3d 823, 824 (Tex. 2015) (holding that urgency resulting from the party's "own making" fails to provide a "compelling reason" for failing to first seek mandamus relief from court of appeals under Tex. R. App. P. 52.3(e)). And when a third party's interests are at stake, the relevant circumstances may include the efforts the third party made to protect the information once the third party received notice of the request. So if, for example, a governmental body establishes that a natural disaster or some other cause beyond its control prevented it from timely asserting its privilege when it was

30

otherwise prepared to do so, those facts may support the finding of a compelling reason to withhold the information despite the noncompliance. Similarly, as discussed below, a compelling reason might exist if the governmental body establishes that substantial harm would result if the information is released. But the Act requires a compelling reason *in addition to* the fact that the information is privileged and therefore excepted from disclosure.

The Court fears that requiring "public disclosure of confidential attorney-client communications as an automatic—and irremediable—sanction for missing a statutory deadline . . . would be a jurisprudential course fraught with peril." *Ante* at __. The course the Court describes, however, is a legislative course, not merely a jurisprudential one. Even if reality justified the Court's unfounded fears, we are not at liberty to substitute our own preferred standards for those the Act imposes. Contrary to the Court's holding, the Act treats the attorney-client privilege as the basis for an exception, not as a compelling reason to withhold such communications when the government fails to timely assert the privilege. The limits on our authority compel us to apply the Act as written.

## C. Harm to the City's interests

Finally, in one of the two cases before us today (Cause No. 15-0073), the City contends that it demonstrated a compelling reason by establishing that the disclosure of its attorney-client communications would "likely inflict substantial harm to the public or the entity." Because the Court concludes that the attorney-client privilege itself provides a compelling reason, it does not reach this argument. *Ante* at __ n.117. I would reach the argument and conclude that the City has failed to establish sufficient harm in this case.

In support of its argument, the City relies on a summary-judgment affidavit in which an assistant city attorney testified that disclosure would "cause substantial harm to the City's bargaining position on a multi-million dollar long-term transaction." According to the affidavit, the communications include "critical information" about issues "critical to on-going negotiations" over a landfill gas lease, identify the lease's "significant provisions" that the City believes "need to be corrected," and disclose "the mechanics" of how the City "decides how and whether to settle disputes." The affiant asserts that disclosure of the information would harm the City's bargaining position in these negotiations and would "prejudice the City in future disputes." Because the Attorney General did not submit any evidence controverting these factual assertions, the City argues that it established a compelling reason to withhold the information as a matter of law.

The Attorney General disagrees. Consistent with his predecessors' long-held view that only mandatory confidentiality and harm to a third party can be a compelling reason under section 552.302, the Attorney General argues that harm to the interests of the governmental body that failed to comply with section 552.301 can never qualify as a compelling reason under section 552.302. *Compare* Tex. Att'y Gen. Op. ORD-676 at 12 (2002) ("Harm to the interests of the governmental body that received the request is not a compelling reason.") *with* Tex. Att'y Gen. Op. ORD-586 at 3 (1991) (stating that the "need of a governmental body, other than the body that has failed to timely seek on open records decision, may, in appropriate circumstances, be a compelling reason for non-disclosure"). According to the Attorney General, protecting the privilege of a party who had the opportunity to claim it but failed to do so cannot constitute a compelling reason because it does nothing to further the purpose of the attorney-client privilege.

I agree with the Attorney General that harm to a third party's interest can be a compelling reason under section 552.302.[20] In fact, many of the Act's specific exceptions protect information because a third party has a privacy, proprietary, or other interest in that information.[21] And section 552.305 includes specific provisions to protect a third party's private interests in otherwise public information. TEX. GOV'T CODE § 552.305; *see also id.* § 552.326 (permitting a governmental body to raise exceptions that involve "the property or privacy interests of another person" in a suit filed under the Act even if the governmental body failed to raise those exceptions in its request for the Attorney General's decision).

But based on section 552.302's actual language, harm to a governmental body's own interests can also qualify as a compelling reason. As explained, section 552.302's plain language

---

[20] Although I agree that a third party's interests *can* constitute a compelling reason under section 552.302, I do not agree that a third party's interests will *always* provide a compelling reason. As explained above, the determination of whether a compelling reason exists must depend on the particular facts and circumstances of each individual case. Thus, to respond to the Court's concern that it should be permitted to consider a "substantial threat of physical harm" to an employee or the "policy of preventing bioterrorism" when deciding whether a compelling reason exists, *see ante* at __, I agree that the Court should consider such facts, just as it should consider the harm that would result from disclosing attorney-client communications, but it must consider those in light of all the facts and circumstances of each particular case.

[21] *See, e.g.*, TEX. GOV'T CODE §§ 552.102(a) (excepting information in a personnel file when its disclosure "would constitute a clearly unwarranted invasion of personal privacy"); .104 (certain information related to competition or bidding); .109 (information when release would "constitute an invasion of privacy"); .1081 ("identifying" information regarding persons who participate in a convict's execution); .1085 (sensitive crime scene images); .109 (certain private correspondence or communications of an elected office holder); .110 (third party's trade secrets and commercial or financial information); .114 (students' education records); .115 (birth and death records); .117 (certain persons' addresses, telephone numbers, social security numbers, and personal family information), .1175 (certain persons' personal identifying information); .1176 (certain persons' home addresses, home telephone numbers, electronic mail addresses, social security numbers, and birth dates); .123 (the name of an applicant for chief executive officer of an institution of higher education); .1235 (the identity of a private donor to an institution of higher education); .126 (the name of an applicant for superintendent of a public school district); .127 (personal information of participants in a neighborhood crime watch organization); .132 (information regarding crime victims); .136 (credit card, debit card, charge card, and access device numbers); .137 (certain email addresses); .138 (information regarding a family violence shelter, victims of trafficking shelter center, or sexual assault program); .140 (military discharge records); .141 (information in an application for a marriage license); .147 (social security numbers); .148 (certain personal information pertaining to a minor); .149 (certain records received from a private entity); .154 (the name of an applicant for certain executive positions of the Teacher Retirement System).

permits withholding despite noncompliance not for any specific reason or type of reason, but for *any* "compelling reason." Applying the statute's plain language despite the Attorney General's longstanding construction to the contrary, *see Pretzer v. Motor Vehicle Bd.*, 138 S.W.3d 908, 914–15 (Tex. 2004) (holding that "neither legislative ratification nor judicial deference to an administrative interpretation can work a contradiction of plain statutory language"), even a non-complying governmental body's own interests may qualify as a reason to permit withholding under section 552.302, but only if that reason is "compelling" under the particular facts and circumstances.

In this case, however, the City's evidence of harm to its own interests, although uncontroverted, fails to provide a compelling reason to withhold the information. TEX. GOV'T CODE § 552.302; *see Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 154 (Tex. 2012) ("Evidence that no one disputes does not necessarily establish a fact as a matter of law.") (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) ("Undisputed evidence and conclusive evidence are not the same—undisputed evidence may or may not be conclusive, and conclusive evidence may or may not be undisputed.")). Certainly, the City's affidavit establishes that disclosure of the communications would be likely to result in some harm to the City's interests. Disclosing communications that identify which lease provisions the City believes to be "critical to the current Lease negotiations" and "critical information" about those provisions would likely weaken the City's bargaining position to at least some extent and thus potentially cause some harm to the City's interests. And disclosing "the mechanics" of how the City "decides how and whether to settle disputes" could "prejudice the City in future disputes."

But other than the affidavit's broad assertion that the resulting harm would be "substantial," the City has provided no evidence of the extent of harm the disclosure would cause. The affidavit explains that the City is renegotiating a "multi-million dollar long-term transaction," but makes no effort to describe the extent to which disclosure would weaken the City's position or harm the City's interests. To demonstrate a compelling reason based on an argument that release of public information would harm the governmental body's interests, the governmental body must provide sufficient facts regarding the nature and extent of the alleged harm to permit the Attorney General or the courts to balance that harm against the public's interest in prompt access to public information. *See, e.g.*, *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006) (holding that magistrate did not abuse her discretion in refusing to seal records in light of "the inadequacy of the City's declarations, which largely make conclusory statements about the content of the documents—that they are confidential and that, in general, their production would, amongst other things, hinder . . . future operations with other agencies, endanger informants' lives, and cast [police] officers in a false light. These conclusory offerings do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents."); *see also Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex. 1987) (requiring party seeking protective order against discovery request to show "particular, articulated and demonstrable injury, as opposed to conclusory allegations").

The City's vague assertion that release of the information at issue would cause "substantial harm" is insufficient to support the conclusion that the alleged harm creates a compelling reason to withhold the information under section 552.302. *See Elizondo v. Krist*, 415 S.W.3d 259, 265 (Tex. 2013) (holding that an affidavit was conclusory when there was a "lack of a demonstrable

and reasoned basis on which to evaluate [the affiant's] opinion"). In short, although the City may have established a "good reason" to permit it to withhold the information, it did not establish a compelling one. The City failed to establish that disclosure would cause such harm to the City's own interests that the need to avoid the harm is so important and urgent that reasonable minds can only conclude that it clearly outweighs the Act's fundamental policy of ensuring that the public can promptly obtain public information from its governmental bodies.

## III.
## Conclusion

The Court contends in these cases that the attorney-client privilege is essential and vital to the operation of our judicial system. The Texas Public Information Act agrees, but it exists to promote the "fundamental philosophy" that the public is entitled to promptly access "information about the affairs of government and the official acts of public officials and employees," which is essential and vital to our "constitutional form of representative government." TEX. GOV'T CODE § 552.001(a). The Act balances these competing interests by permitting the government to promptly assert its privileges and request the Attorney General's decision on whether they trigger an exception to the Act's disclosure requirement and by requiring a compelling reason to withhold even privileged information when a governmental body fails to timely seek the Attorney General's decision.

Relying on the Act's plain language, I conclude that a "compelling reason" is one that is so important and urgent that reasonable minds can only conclude that it clearly outweighs the Act's fundamental policy of ensuring that the public can promptly obtain public information from its governmental bodies. Because the Act requires both that an exception apply and that a compelling reason exist, neither the Act's exceptions nor the privileges and confidentiality that trigger an

36

exception are sufficient alone to establish a compelling reason. The Act does not support the Attorney General's position that only certain reasons, or certain types of reasons, can be "compelling," and instead supports the City's contention that, under some circumstances, harm to the governmental body's own interests can present a compelling reason. In these cases, however, the City has failed to demonstrate such harm.

Because the City has failed to demonstrate any compelling reason to withhold the attorney-client communications at issue, the Act requires the City to disclose them. Because the Court holds otherwise, I respectfully dissent.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: February 3, 2017